# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DILIP T. P., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:23-cv-321(MPS) |
| | : | |
| KILOLO KIJAKAZI, Acting | : | |
| Commissioner of Social | : | |
| Security, | : | |
| | : | |
| Defendant | : | |

### RECOMMENDED RULING ON PENDING MOTIONS

Dilip T.P. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated October 21, 2022. Plaintiff timely appealed to this Court. Currently pending are plaintiff's motion for an order reversing or remanding his case for a hearing (Pl. Br., Dkt. #16) and defendant's motion to affirm the decision of the Commissioner (Def. Br., Dkt. #18).

For the following reasons, the Court recommends that plaintiff's motion to remand should be GRANTED and the Commissioner's motion to affirm should be DENIED.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[1] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . .." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled without considering vocational factors such as age,

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

### PROCEDURAL HISTORY

Plaintiff initially filed for Social Security Disability Insurance Benefits under Title II in 2011.  Following a denial, the plaintiff appealed to this Court and his motion to remand was denied by the Honorable Alfred V. Covello on July 7, 2016. (Dkt. #16-1 at 2.) Plaintiff then filed a new application seeking Social Security Disability Insurance Benefits under Title II on October 25, 2016. (R. 11.)  Following an initial

---

education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

denial and a denial on reconsideration, Administrative Law Judge Deirdre R. Horton held a hearing on May 21, 2019. (R 32-73.) Following the hearing, ALJ Horton issued a written decision denying plaintiff's application on June 12, 2019. (R. 11-21.) Plaintiff thereafter sought review by the Appeals Council, which was denied on July 27, 2020. (R. 1-6.) Plaintiff then timely filed an appeal seeking judicial review and the matter was subsequently remanded back to the Agency for further review on May 14, 2021. (R. 2199-200.)

Following remand, this matter was sent to ALJ I.K. Harrington for a second ALJ hearing on October 11, 2022. (R. 2126.) Following the hearing, ALJ Harrington issued an unfavorable decision on October 26, 2022. (R. 2100-20.) Thereafter, plaintiff then filed this appeal seeking judicial review of that decision. (Dkt. #1.)

**THE ALJ'S DECISION**

After applying the five-step evaluation process, the ALJ concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from March 9, 2013, the alleged onset date, through March 31, 2015, the date last insured." (R. 2119.)

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity from the alleged onset date of March 9, 2013 through the date last insured, March 31,

2015. (R. 2106.) At step two, the ALJ found that plaintiff had the following severe impairments: "degenerative joint disease, substance addiction disorder, and mood disorder." (R. 2106.) The ALJ additionally found that the plaintiff suffered from a variety of conditions that were not severe: hyperlipidemia, hypertension, obesity, upper airway resistance syndrome, obstructive sleep apnea, and urinary tract infection.  (R. 2106.)  The ALJ' opinion states that plaintiff was non-compliant with hyperlipidemia treatment but had been educated regarding the medication needed.  (R. 2106.)  The ALJ observed that while assessed for hyperlipidemia, treatment for the condition was limited. (R. 2106.)  The ALJ additionally observed that plaintiff had been medicated for his hypertension and was "feeling well."  (R. 2106.)  Similarly, the ALJ found that plaintiff was assessed for both obstructive sleep apnea and a urinary tract infection.  According to the ALJ, both of these conditions have received limited treatment and were resolved or controlled during the relevant period. (R. 2106.)  The ALJ stated that the plaintiff was obese and that, while standing alone obesity is not a severe condition, it was considered in conjunction with plaintiff's co-existing conditions when calculating plaintiff's RFC. (R. 2106.) Therefore, the ALJ determined that these additional conditions do not significantly limit the plaintiff's ability to work and are non-severe.  While

not severe, the ALJ stated that all medically determinable conditions were considered in crafting the plaintiff's RFC.

At step three, the ALJ found that plaintiff's severe impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). (R. 2106.) First, the ALJ reviewed Listing 1.18 regarding abnormality of a major joint.  The ALJ found that the plaintiff did not meet the criteria.  The ALJ noted that the record indicated "stable knee findings" and a "healed fracture of the distal left femur.". (R. 2107.) Additionally, the ALJ cited to portions of the record to indicate that the plaintiff was "ambulatory to the clinic without as assistive device" and "doing household chores." (R. 2108 (citing Ex. B1F at 114.)  In light of these records, the ALJ found that the plaintiff did not meet the criteria of Listing 1.18(D).

The ALJ also considered Listing 12.04 which pertains to the plaintiff's mental impairments.  The ALJ reviewed the record and indicated that the medical records show only mild limitations in "understanding, remembering, or applying information" and "interacting with others." (R. 2108.)  Further, according to the ALJ, the records show that plaintiff had moderate limitations related to the ability to "concentrate, persist, or maintain pace;" and "to adapt or manage himself."  (R. 2108.) The ALJ

7

determined that, since the records failed to show sufficiently marked or extreme limitations in the mental functioning areas to meet the 12.04 listing criteria under paragraph B or C. (R. 2109.)

The ALJ then found that the plaintiff had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) except: The claimant could lift or carry 20 pounds occasionally and ten pounds frequently. The claimant may stand/walk four hours and sit for six hours of an eight-hour day. The claimant may occasionally balance, stoop, and climb ramps and stairs. The claimant may never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. The claimant requires the use of a cane for ambulation. The claimant should wear a knee brace. The claimant requires simple, routine task involving no more than simple, short instructions and simple, work-related decisions. The claimant can adapt to routine workplace change. The claimant may have occasional interaction with the public, coworkers, and supervisors.

(R. 2109.) At step four, the ALJ concluded that plaintiff could not perform his past relevant work as Taper or a Painter. (R. 2117.) At step five of the process, the ALJ determined that based on the testimony of a vocational expert, there were sufficient jobs available in the national economy that plaintiff can perform. Specifically, the ALJ identified the positions of Document Preparer, Table Worker, and Addressing Clerk. (R. 2119.)

Upon the completion of the five-step sequential evaluation process, the ALJ determined that the plaintiff was not under a

disability from his amended alleged onset date through the date last insured. (R. 2119.)

The Court notes that plaintiff filed a "Statement of Material Facts" from the plaintiff's initial appeal, which was submitted to the ALJ on remand and is part of the record. (Dkt. #16-1 at 4.)  Plaintiff relies on the facts cited therein for this motion.  The Commissioner indicated in its motion to affirm the decision of the Commissioner that it adopted those facts, excluding any inferences, arguments, or conclusions asserted therein. (Dkt. #18-1 at 2.) The Court has fully reviewed and generally adopts the facts set forth by the plaintiff. While utilizing these facts, the Court will further supplement throughout the discussion as necessary.

## DISCUSSION

The plaintiff makes several arguments in support of his motion to reverse the decision of the Commissioner.  First, Plaintiff argues that the ALJ erred by improperly weighing the medical opinion evidence, violating the treating physician rule. (Pl. Br. 4-8.)  Second, plaintiff contends that the ALJ failed to properly evaluate the plaintiff's Veterans Affairs Disability rating and records. (Pl. Br. 9-11.) Finally, Plaintiff argues that the ALJ erred in the application of the medical-vocational guidelines related to plaintiff's age.  (Pl. Br. 11-17.)

**1. The ALJ Improperly Weighed the Medical Opinion Evidence**

Plaintiff's first argument relates to the application of the treating physician rule to the medical opinions analyzed in this case.  The primary thrust of plaintiff's argument is that the ALJ failed to properly evaluate the medical source opinions provided by Dr. Cornelio Hong, plaintiff's primary care physician and Dr. Samuel Bridgers, a state agency consultant.[4]

The medical opinions of treating physicians are generally given more weight than other evidence.  The treating physician rule[5] stipulates that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is

---

[4] The plaintiff makes a fleeting argument and asserts error on the part of the ALJ related to several other medical source opinions, specifically those of Doctors Werner, Varallo, and Smith. (Dkt. #16-1 at 5.)  As to Doctors Smith and Varallo, the ALJ granted these opinions minimal weight in light of the fact that they were rendered following the DLI and from doctors who did not treat plaintiff during the relevant period. (R. 2114-15.)  The Court will not further address these opinions because the ALJ's reasons are sufficiently good reasons under the treating physician rule to support the assignment of minimal weight.  As to Dr. Werner, while the ALJ does not mention the timing issue specifically the medical opinion was provided in relation to plaintiff's mental/emotional capabilities and was provided on 4/18/19, well after the DLI. (R. 2088-89.)  There is no indication on the medical opinion that there was a treating relationship during the relevant period or that it is reflective of plaintiff's cognitive abilities or limitations during the relevant period over three years earlier.  Additionally, the ALJ has summarized and cited a number of medical records to show that the opinion is sufficiently inconsistent with other records to warrant the weight assigned.

[5] While not in use for current claims, for claims filed before March 27, 2017, the regulations require the application of the "treating physician rule," under which treating source opinions could receive controlling weight provided they were not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(c)(2).

given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) ("A treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician").

"The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02-CV-103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)). It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record contain[s] conflicting opinions on the same medical condition." Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4,

2015) (citing <u>Veino v. Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002)).

In determining the amount of weight to give to a medical opinion, the ALJ considers the examining relationship, the treatment relationship, the length of treatment, the nature and extent of treatment, evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors.  20 C.F.R. § 404.1527.  It is generally appropriate to "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 416.927(c)(5).

After considering these factors, "the ALJ must 'comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion.'"  <u>Greek v. Colvin,</u> 802 F.3d 370, 375 (2d Cir. 2015) (citing <u>Burgess</u>, 537 F.3d at 129) (alteration in original).  The ALJ may not simply substitute his or her own judgment for that of the treating physician, and failure to provide good reasons for the weight given to a treating physician's opinion is grounds for remand. <u>Id.</u>

"SSA regulations provide a very specific process for evaluating a treating physician's opinion" and failure to "*explicitly consider*" any of the named factors is grounds for

rejecting the ALJ's decision.  Greek, 802 F.3d 370, 376 (2d Cir. 2015) (emphasis added).  However, an ALJ is not required to explicitly cite to the treating physician rule or its factors.  Crowell v. Comm'r of SSA, 705 Fed. Appx. 34, 35 (2d Cir. 2017).  It is sufficient that the ALJ substantively reference the rule and provide good reason for not assigning a plaintiff's treating physician controlling weight.  Id.

Here the ALJ has assigned minimal weight to plaintiff's treating primary care physician, Dr. Hong.  (R. 2114-15.)  Conversely, State agency consultant Dr. Bridgers opinion was provided with great weight. (R. 2114.)  Plaintiff assigns error to both of these evaluations.

First, plaintiff argues that the ALJ has failed to properly evaluate Dr. Hong's opinion in light of the dictates of the treating physician rule.  The Court agrees.

Plaintiff asserts that the records show plaintiff treating with Dr. Hong since at least 2010.  (Dkt. #16-1 at 7.)  Plaintiff argues that it was Dr. Hong who "personally and regularly evaluated" plaintiff's medical condition during the relevant period, and indeed for a longer period.  (Dkt. #16-1 at 8.)  Further, plaintiff asserts that Dr. Hong's treatment records indicate a worsening of plaintiff's condition over time and contain referrals for more care.  Specifically, a referral to orthopedics and a request for wheelchair van transportation

for plaintiff.  (Dkt. #16-1 at 8.)  Plaintiff argues that Dr.
Hong's apparent position overseeing and coordinating plaintiff's
overall care show the level of involvement Dr. Hong had and
illustrate that his opinion should have been provided with more
weight.

In response to plaintiff's argument related to the treating
physician rule, the Commissioner cites to the ALJ's reasoning
which was provided above.  In addition, the Commissioner cites
to a number of other medical records cited throughout the ALJ's
opinion to further support the ALJ's position regarding the
weight assigned to Dr. Hong's opinion.  The Commissioner argues
that the outline of the treatment notes from visits with Dr.
Hong, provided by the ALJ at a different point in the decision,
sufficiently articulate the factors required under 20 C.F.R.
§404.1527.  (Dkt. #18-1 at 5-6.)

Dr. Hong provided a medical opinion in September of 2017.
(R. 801-06.)  In that opinoin Dr. Hong opined that plaintiff
could never lift or carry over 20 pounds; could only stand or
walk 30 minutes to one hour per workday; required a cane for
ambulation; could never use his feet to operate controls; could
never climb stairs, ramps, ladders, or scaffolds among other
limitations.  (R. 801-06.)  According to his opinion, these
quite extensive limitations, are supported by x-rays and MRI

reports related to plaintiff's ankle and knee surgeries.  (R. 801, 803, 804, and 805.)

In evaluating Dr. Hong's opinion, that ALJ highlighted the limitations imposed by Dr. Hong.  The ALJ then stated "[t]he undersigned gives this opinion minimal weight as it is inconsistent with the treatment notes." (R. 2115.)  To support this assignment of little weight, the ALJ states "[t]he claimants leg brace helped with his knee pain.  Further, he repeatedly stated that his opioid mediations were effective and that he was functional better on his medications with no side effects.  Additionally, the claimant admitted the independently performing his activities of daily living." (R. 2115.)

In determining that the use of the brace helped the knee pain, the ALJ cited to two pages in the record.  First, was page 469 of the record, which contains a note from a physical therapist referencing plaintiff's desire to have his brace replaced since it was worn out.  The second record was page 495 which contains a primary care visit note from a July 14, 2014 visit with Dr. Hong.  The record from July 14 contains undated progress notes that appear to be from prior to the visit in July of 2014.  The notes indicate that plaintiff was provided a knee brace and that it apparently assisted with "strength" in the joint.  In the next note it is indicated that two months later plaintiff reported intense pain even with the knee brace on and

an inability to "bear weight at the end of the day". (R. 495.)
The final entry from the date of the appointment identifies that
"pain is still moderate and his restricted mobility is still
moderate." (R. 495.)  This entry also states that the plaintiff
was seeing his doctor to discuss repeat surgery options.  (R.
495.)

The remaining record citations that the ALJ provides relate
to three separate records indicating that the plaintiff reported
his opioid medication was working to control pain.  (R. 445,
457, and 467.)  These records are from opiate refill telephone
notes from when plaintiff refilled his medication regimen. The
final record the ALJ cites is page 638 of the record, which
contain notes from a social worker outlining home visits with
the plaintiff.  The ALJ indicates that this record shows the
plaintiff "admitted to independently performing his activities
of daily living," and is another reason that Dr. Hong's 2017
opinion is not worthy of controlling weight. (R. 2115.)  A
review of the record shows that during the home visit the social
worker noted that the plaintiff was casually dressed, and his
hygiene and grooming were good.  (R. 638.)  Another entry on the
same page notes that plaintiff had his son staying with him
every once in a while. (R. 638.)  A review of the record
indicates that plaintiff stated he is "doing well," however, the

same record also indicates that he reported "problems with his knee." (R. 638.)

The Court is not in a position to evaluate medical evidence or disability, and it does not wish to do so.  However, it is noteworthy, and concerning, that a review of the relevant pages of the record, cited by the ALJ to support the assignment of minimal weight to the Dr. Hong's opinion do not appear to clearly articulate the ALJ's concerns.  As such, the Court is not in a position to find that the ALJ's reasons for assigning minimal weight to Dr. Hong's opinions are sufficiently "good reasons."  The pages cited by ALJ state that strength was added to the joint through a knee brace, plaintiff complained of continued pain and mobility issues, and inability to bear weight.  (R. 469 and 495.)  It does not appear to the Court that these records indicate that the "leg brace helped his knee pain" as asserted by the ALJ. (R. 2115.)  Further, the opioid refill records are notes from phone calls. (R. 445, 457, and 467.) The notes contain no narrative, no explanation from the plaintiff, and no interpretation by a doctor of how the pain management medication may or may not impact plaintiff's functional abilities.  Finally, it does not appear to the Court that the social worker visit records do any more than indicate an ability to handle simple tasks like showering or dressing.  There does

not appear to be much, if any, reference to completing significant tasks of daily living.

As previously mentioned, "[t]he SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015). "There are, of course, circumstances when it is appropriate for an ALJ not to give controlling weight to a treating physician's opinion." Id. However, when not providing controlling weight, the ALJ must articulate a variety of factors related to the opinion and provide good reasons for the lack of controlling weight. Id. In this case, the ALJ has failed to do so. The ALJ made reference to the fact that Dr. Hong was a treating physician, and a reading of the entire opinion does provide an indication that it was a long-term treatment relationship. (R. 2111-15.) However, other factors such as any specialty of Dr. Hong and the frequency of treatment with Dr. Hong are less clear and not articulated. In addition, as discussed earlier, the ALJ's attempt to highlight inconsistency between the opinion and other evidence in the record has fallen short.

Perhaps most troubling, however, is the lack of "good reasons" from the ALJ for the assignment of minimal weight. The Court has already articulated the apparent issues with the reasons provided by the ALJ. "Failure to provide 'good reasons'

for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)(quoting Schaal v. Apfel, 134 F.3d 496, 505 (2d. Cir. 1998)). Additionally, the Court notes that the Commissioner cites to other sections of the ALJ's ruling and other records to support the ALJ's reasons for discounting Dr. Hong's opinions beyond the record cited by the ALJ. (Dkt. #18-1 at 5.) However, it is the ALJ's obligation to clearly provide good reasons and the information supporting those reasons to the plaintiff. Attempts by the Commissioner to assist in the "explanation of the ALJ's rationale is not a substitute for the ALJ providing good reasons in his decision for the weight given to treating physician's opinions." Peralta v. Barnhart, No. 04-CV-4557(JG), 2005 WL 1527669, at *10(E.D.N.Y. June 22, 2005.)

Having found that the ALJ erred in the application of the treating physician rule as it relates to Dr. Hong's opinion, the Court need not directly address plaintiff's argument regarding the weight assigned to non-examining source Dr. Bridgers. The Court does note, however, that much of the argument relates to the fact that Dr. Bridgers' opinion is given great weight and that he is not a treating source and only reviewed the record years after the DLI. While this is potentially problematic, this alone is not a *per se* reason to remand a case. The Court also notes, however, that the same citations that the ALJ used

to discount Dr. Hong's opinion serve as the main support for the
weight assigned to Dr. Bridgers' opinion.  In light of the above
discussed generosity with which the ALJ interpreted those
records, it is likely upon remand that the weight assigned to
this opinion should also be reevaluated.

### 2. The ALJ Failed to Properly Evaluate Plaintiff's Veterans Affairs Disability Rating and Records

Plaintiff's next argument relates to the ALJ's evaluation,
or lack thereof, regarding plaintiff's VA disability finding.
(Dkt. #16-1 at 9-10.)  Having found the above referenced error
regarding the treating physician rule, the Court need not
address this argument.  However, considering that this issue
will likely be presented on remand, it is worthy of brief
discussion.

Plaintiff was seen by two separate doctors during the VA
disability process, Dr. Joanne Concato and Dr. Wesley Vitzke.
(R. 589 and 469.)  Following physical examination and evaluation
both providers found that the plaintiff was unable to perform
physical work or his prior job. (R. 478 and 596.)  Based, in
part, on these medical opinions and findings, the VA issued a
determination that plaintiff was unemployable, effective April
28, 2016. (R. 145-150.)  Plaintiff acknowledges in his brief,
and the ALJ found, that the Commissioner is not bound by the VA
determination as it is based on a different standard and an

issue that is left to the Commissioner to determine.  (Dkt. #16-1 at 10; R. 2116)(citing 20 CFR 404.1527(d)).

Plaintiff, however, alleges that the ALJ erred in failing to mention or discuss the findings of Doctors Concato and Vietzke in their medical forms.  Plaintiff argues that the reports from these providers, which are lengthy, provide examination findings and are evidence of plaintiff's functional limitations during the relevant time period. (Dkt. # 16-1 at 10.) Plaintiff argues that the ALJ failed to explain the consideration that was provided to these records and argues the failure was in part due to the fact that these records do not support the RFC and, instead, support the opinion of plaintiff's treating physician Dr. Hong.  (Dkt. #16-1 at 10.)

The Commissioner responds to this argument on three fronts. First, that the VA records are contained within Exhibit B1F in the record and that record was repeatedly referenced in the ALJ's decision and the ALJ referenced findings similar to those of the VA doctors. (Dkt. #18-1 at 11-12.)  Second, that Dr. Bridgers, whose opinion was provided great weight, reviewed the records as evidence in formulating his medical opinion.[6] (Dkt. #18-1 at 12.) Finally, the Commissioner argues that the VA

_____

[6] While plaintiff makes a passing reference to Dr. Bridgers not discussing this evidence (dkt. #16-1 at 11), the Court does not consider this very brief reference as a legitimate argument warranting remand.  Therefore, the Court will not address Dr. Bridgers' opinion further related to the VA medical reports.

rating is of no moment, because the Commissioner is not bound by it.[7] (Dkt. #18-1 at 12.)

In this case, the Court will follow the Honorable Michael P. Shea's observation and admonition that "[d]ecisions of other governmental agencies are not binding on the Commissioner's disability determination. *See* 20 C.F.R. § 404.1504; SSR 06-03p. Nonetheless, the Second Circuit has held that they are 'entitled to some weight and should be considered.'" Sena v. Berryhill, No. 3:17-CV-912 (MPS), 2018 WL 3854771, at *6 (D. Conn. Aug. 14, 2018)(quoting Rivera v. Colvin, 592 Fed. Appx. 32, 33 (2d Cir. 2015)). "The point of the Second Circuit's admonition to accord VA determinations "some weight" is that in addition to the oral testimony and medical evidence, VA rating decisions are another item to be placed on the evidentiary scale." Machia v. Astrue, 670 F. Supp. 2d 326, 336 (D. Vt. 2009). Further, in their own program operations manual, the SSA states that when looking at decision of other agencies ALJ's "also consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive according to

---

[7] As previously mentioned, both plaintiff and the ALJ appear to agree with the Commissioner that the final determination of plaintiff as disabled by the VA is not binding on the Commissioner. The Court is not under the impression that plaintiff is making such an argument. Instead, the argument relates to the ALJ's lack of evaluation of the underlying medical opinions and findings from the doctors involved. The Court will not, and need not, address the issue of the VA final disability finding any further.

the appropriate category of evidence in DI 24503.005 Categories
of Evidence." SSA POMS DI 24503.045(B).

The ALJ's rather hasty dismissal of the VA findings appears
problematic.  The ALJ in this case stated:

> The undersigned has considered the November 2013 opinion
> of Joanne Concato, M.D., the claimant's examining
> internist, and October 2014 opinion of Wesley Vietzke,
> M.D., another examining internist, who indicated that
> the claimant was unable to perform physical work or
> unable to work at his prior job. (Exhibit B1F at 151,
> 269). The statement indicating the claimant is
> "permanent disability," or "unable to work," is not a
> medical opinion, but rather an administrative finding
> dispositive of a case and are issues are reserved to the
> Commissioner. These issues are reserved to the
> Commissioner, and as such are not entitled to any special
> significant weight (20 CFR 404.1527(d)).

(R. 2116.)  That is the entirety of the direct discussion
related to the consideration or weight ascribed to the VA
determination and the VA evidence.  The Court agrees with
the Commissioner that the ALJ does not need to specify each
and every piece of evidence submitted. (Dkt. #18-1 at 11.)
However, the Court is not persuaded that the ALJ has
adequately articulated how the underlying medical opinions
at issue in the VA decision were considered. The
Commissioner's argument that the ALJ's citation to records
contained in exhibit B1F, which also contains the findings
of Doctors Concato and Vietzke, indicates sufficient
consideration of the medical opinions from Doctors Concato
and Vietzke is unavailing.

Exhibit B1F contains 461 pages of medical records. While it is true that the ALJ discussed many of those records in her decision, there are minimal references to the medical opinions of Doctors Concato or Vietzke.  Upon review the Court finds few citations and minimal, if any, analysis related to those records.  The ALJ cited pages 476 and 596 of the record, which are two pages of the reports at issue, to identify two separate instances of a check box indicating "no" regarding "x-ray evidence of patellar subluxation." (R. 2111.)  The remaining references are to Dr. Vietzke's records noting the plaintiff used a knee brace and cane, and that there were no flare ups impacting plaintiff's knee or lower leg.[8]  (R. 2111, citing R. 471 and 475.)

It is, at best, apparent that the ALJ is aware of the records from Dr. Vietzke and Dr. Concato.  However, it is not in any way clear what weight, if any, the ALJ supplied to those medical records and opinions.  Accordingly, this

_____

[8] The Court notes that there are multiple references throughout the ALJ decision to page 469 of the record, which is page 142 of exhibit B1F. A review of this page indicates that page 469 contains the end of one medical record and the beginning of Dr. Vietzke's evaluation.  The references in the ALJ's opinion all relate to the ordering of a brace for left knee instability. (R. 2111-14.)  That information is contained in the records from Physical Therapist Shane McGloin and a brace consult on October 20, 2014, which conclude on page 469.  These references by the ALJ do not indicate any consideration of medical evidence provided by Dr. Vietzke.

error should be remedied on remand.  The ALJ should properly evaluate the medical evidence supplied with the VA disability rating and articulate what level of weight is appropriate and supply some reason why.  Of course, the Court is not in a position to opine on how the medical records should be interpreted or how much weight should be given to them by the ALJ.  It is possible that an ALJ will evaluate them and find that they are of little or no value. But without that analysis, the Court finds that the ALJ has erred and that remand is warranted.

### 3. The ALJ Did Not Err in the Application of the Medical-Vocational Guidelines Based on Plaintiff's Alleged Borderline Age

While not necessary in light of the Court's previous findings that the ALJ failed to adhere to the Treating Physician Rule and failed to properly evaluate the VA evidence, the Court will briefly address plaintiff's final argument.  Plaintiff's final argument relates to Step 5 of the sequential evaluation process, wherein the plaintiff alleges that the ALJ erred by failing to find that the plaintiff was a borderline age situation.

At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the plaintiff can perform.  See 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014).  "Ordinarily, the Commissioner may satisfy her burden of proof at step five by resorting to the applicable Medical Vocational Guidelines (i.e., "the Grids"), which consist of charts that indicate whether a claimant is disabled based on his or her age, education, RFC, and work experience." Goncalves v. Berryhill, No. 3:17-CV-01830(JCH), 2018 WL 6061570, at *3 (D. Conn. Nov. 20 2018).  In cases where the Grids do not fully describe the plaintiff's work limitations, the Commissioner will seek out the "testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which [the] claimant can obtain and perform." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999)(internal citation omitted).  The Grids utilize three age categories. 20 C.F.R. § 404.1563.  "Younger person," defined as someone under the age of 50. 20 C.F.R. § 404.1563(c).  A "person closely approaching advanced age," defined as a party between 50 and 54. 20 C.F.R. § 404.1563(d).  And finally, a "person of advanced age," which is someone aged 55 or older. 20 C.F.R. § 404.1563(e).

The regulations applied by the Commissioner further indicate that the SSA will "use each of the age categories that applies to you during the period for which we must determine if

you are disabled." 20 C.F.R. § 404.1563(b). Additionally, the categories will not be applied "mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." Id. (emphasis added).

According to plaintiff's argument, plaintiff was six months and 16 days from reaching the age of 50 as of his DLI. (Dkt. # 16-1 at 11.) Simply put, plaintiff argues that if the ALJ found this to be a borderline age case and included the plaintiff in the higher age bracket of "closely approaching advanced age" the Grids would dictate a finding of disabled. The Court agrees that it appears true that utilizing that age bracket would indeed classify the plaintiff as disabled under the Grids. However, the Court finds no error on the part of the ALJ because plaintiff was not close enough to the age cutoff to justify the application of the borderline age situation.

"When deciding which age category to use, SSA guidance directs ALJs to take a 'sliding scale' approach that considers 'the overall impact of all the factors on the claimant's ability to adjust to doing other work (e.g., residual functional capacity combined with age, education and work

experience....).'" Goncalves, 2018 WL 6061570 at *3 (quoting

HALLEX I-2-2-42(C); see also 20 C.F.R. § 404.1563(b)).  Here, as

in Goncalves, the determination of whether this "case qualifies

as a borderline age situation turns entirely on whether he

satisfied the first requirement of being within a few days to a

few months of reaching an older age category." Goncalves, 2018

WL 6061570, at *3 (internal quotation omitted).  While the SSA

has a desire to avoid mechanical application of age cut-offs, it

has spelled out some guidance in the Hearings, Appeal and

Ligation Law Manual and its Program Operation Manual.  "In these

documents, the SSA notes that '[t]he word 'few' should be

defined using its ordinary meaning, e.g., a small number[,]' and

that the Commissioner generally 'considers a few days to a few

months to mean a period not to exceed six months.'" Goncalves,

2018 WL 6061570, at *4 (quoting HALLEX I-2-2-42(B)(1) and  POMS

DI 25015.006(B)).

Plaintiff cites to Goncalves in arguing that this matter

should have been considered to be a borderline age case.

However, in Goncalves, the Honorable Janet C. Hall found error

where an ALJ had not discussed the possibility of a borderline

age situation for a claimant who was under five months from

reaching the next age category.  Goncalves, 2018 WL 6061570, at

*6.  Plaintiff additionally cites to another case where a

claimant was "slightly less than five months away from being 50

years of age on the relevant date." Dkt. #16-1 at 15 (emphasis
added)(quoting Spease v. Saul, No. 3:19-CV-1199 (JAM), 2020 WL
3566902, at *9 (D. Conn. July 1, 2020)).  In Spease, the
Honorable Jeffery A. Meyer indicated that the ALJ did not
discuss anything about borderline age regulations and that
failure, in light of the claimant's age warranted remand.
Spease, 2020 WL 3566902, at *9.  Differing from both of the
cases cited by plaintiff, the ALJ in this matter clearly did
know of and consider the borderline age situation and addressed
it in the decision.  (R. 2118.)  While plaintiff might disagree
with the application of the borderline age classification, being
close to the somewhat fluid six-month cutoff mentioned by the
SSA regulations is insufficient to warrant remand and create a
new outer border on the existing borderline.  *See*, *Jody* L. B. v.
Comm'r of Soc. Sec., No. 5:21-CV-734 (CFH), 2022 WL 1541461, at
*11 (N.D.N.Y. May 22, 2022)(finding that someone six months and
three days away from an age border was not a borderline age
situation).

While finding that the borderline age situation does not
warrant remand, the Court has determined that the ALJ committed
error warranting remand in her application of the treating
physician rule and her analysis of the VA evidence.  Of course,
upon remand and following another ALJ hearing, an ALJ might
evaluate the borderline age situation differently.  The Court,

while commenting, does not intend for this ruling to be read as instructions to be followed in drafting a new ruling as related to the borderline age situation.

<u>**CONCLUSION**</u>

Based on the foregoing, the Court recommends that plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #16) should be GRANTED and the Commissioner's motion to affirm that decision (Dkt. #18) should be DENIED.

This is a recommended ruling. **Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order.** *See* Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen (14) days may preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), & 72; D. Conn. L. Civ. R. 72.2(a); <u>F.D.I.C. v. Hillcrest Assoc.</u>, 66 F.3d 566, 569 (2d Cir. 1995); <u>Small v. Sec'y of H.H.S.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

SO ORDERED this 5th day of February, 2024, at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge